BECKLEY

*v.*

RIVERSIDE LAND CO. *et al.*

(*Supreme Court of Appeals of Virginia, Dec. 19, 1895.*)

[23 S. E. Rep. 778.]

**Equity Practice—Rescission of Contract—False Representations.**

To authorize the grantee to rescind a conveyance for false representations, it must be shown that they were material, were relied on by the grantee, and made to induce him to enter into the contract.

**Same—Same—Same—Case at Bar.**

A conveyance will not be rescinded for false representations by the grantor that an improvement company had secured certain industries to be located near by, where, before the conveyance, the grantee heard the president of the company publicly state that no industries had been secured.

**Same—Same—Same.**

In an action to rescind a conveyance for alleged false representations, the fact that other land agents, in attempting to sell land similarly located, made similar representations to others, is immaterial.

**Same—Same—Same—As to Future Events.**

A purchase of a lot during a boom period will not be set aside for the alleged false representation that a railroad was going to build its track along the river bank, surveys for which had been made, and thereby prevent the land from being overflowed by high water, where, though the track had been built, openings for large drains would have had to be left, through which the high water would have backed up and overflowed the land, and that the grantee purchased the land on the same day that his grantor purchased it at a sale by a land company, at which competition by bidders was extraordinary.

Appeal from circuit court of city of Lynchburg.

Suit by Alfred Beckley against the Riverside Land Company and others. There was a decree for defendants, and complainant appeals. Affirmed.

*Pollard & Sands* and *J. H. Lewis*, for appellant.

*Wilson & Manson*, for appellees.

CARDWELL, J., delivered the opinion of the court.

The appellant, Alfred Beckley, bought of R. P. Bowyer, one of appellees, on the 28th of October, 1890, two lots in the plan and subdivision of the lands of the Riverside Land Company at Buchanan, Va., the one lot being numbered 17, in block 5, and the other lot 4, in block 8 ; and contracts under seal were entered into between these parties, stipulating the price and terms of payment as to each lot, respectively. Subsequently, Bowyer delivered to Beckley two deeds, executed by him, dated 28th day of October, 1890, conveying these lots of land, respectively, to Beckley,—each deed embracing this provision : "But this conveyance is made subject to a deed of trust executed by R. P. Bowyer to W. M. Woodson, trustee, conveying said lot to secure the payment to the Riverside Land Company, of Buchanan, of two negotiable interest-bearing notes, for $300 each, dated the 28th of October, 1890, and payable in 6 and 12 months, respectively ; and it is expressly understood that the said Alfred Beckley assumes the payment of said notes, and covenants to indemnify and hold the said R. P. Bowyer harmless by reason thereof." These deeds were delivered by Beckley to the clerk of the county court of Botetourt county, and duly recorded. After Bowyer's notes to the Riverside Land Company became due, and default had been made in their payment, the company recovered judgment against Bowyer for the amount due, and, learning that Beckley was indebted to Bowyer, garnisheed Beckley, and obtained judgment in favor of the company for the amount due by him

to Bowyer. Upon this judgment an execution was sued out against Beckley, and levied upon his property. Whereupon Beckley gave a forthcoming bond, which was afterwards forfeited, and a new execution thereon issued, and placed in the hands of the sheriff of Botetourt county, and to avoid the enforcement of this execution Beckley filed his bill of complaint in the circuit court for the city of Lynchburg, at the first November rules, 1892, against the Riverside Land Company, of Buchanan, R. P. Bowyer, and J. L. Garland, sheriff of Botetourt county. And at the second November rules, 1892, he filed his amended bill against the same parties, alleging that he had purchased the two lots, conveyed to him by Bowyer, from Bowyer as the agent of the Riverside Land Company, and had paid Bowyer the sum of $600 cash on each lot, and given his two notes, of $300 each, at 6 and 12 months, on each lot (making $1,200), for the deferred payments ; that the company had executed a deed to Bowyer for the lots ; and that Bowyer had conveyed them to him (Beckley), etc. The prayer of the original and amended bill was for an injunction to restrain the sheriff of Botetourt county from enforcing the execution against complainant ; that the deeds conveying the lots to him be declared null and void ; that the judgment against complainant on the garnishee proceedings be set aside, and declared to be of no effect ; and that a decree be made against the Riverside Land Company for the repayment to complainant of the money already paid by him on the purchase of the lots, upon the ground that the contract entered into by the complainant had been procured by false representations. The false representations alleged are as follows : (1) That the Shenandoah Valley Railroad had agreed so to locate its tracks, with reference to the lands of the Riverside Land Company and the James river, as to prevent the overflow of the land, by means of an embankment on which was to be laid the railroad tracks ; (2) that a bridge was to be built extending from the land of the Riverside Land Company to that of the Central Land Company, on the other side of James river ;

and (3) that on the land of the Central Land Company numerous industries, factories, etc., had been secured to be located, which would greatly add to the value of the lots purchased by complainant whereon to erect houses, both for business and for dwellings.    The Riverside Land Company and R. P. Bowyer filed their several demurrers and answers to this original and amended bill ; and in their answers each denies most emphatically that Bowyer was the agent of the Riverside Land Company in making the sale of these lots to the complainant, or that any such representations, as complainant alleged to have been made, had been made and proven false, and setting out a state of facts entirely at variance with those made by the complainant.    Upon the hearing of the cause, upon the pleadings and the evidence taken for both the complainant and defendant, the circuit court for the city of Lynchburg dissolved the injunction awarded in the case, and decreeing to the Riverside Land Company damages at the rate of 10 per cent. per annum, as provided by law, on the sum due to the company by the complainant, including interest and costs, to the date of the decree ; and from this decree an appeal was allowed to this court.

The assignment of error to this decree is of a general character ; that is, that upon the facts and law of the case the decree is erroneous.    The law of the case is well settled, as shown by the recent decisions of this court.    In the case of Wilson v. Carpenter, 21 S. W. 243, Harrison, J., in delivering the opinion of the court, says: "No man is bound by a bargain into which he has been deceived by fraud or misrepresentations.    Whenever a purchaser has been induced by a material misrepresentation of the vendor to buy, he has the right to repudiate the contract," etc.    Keith, P., in the case of Improvement Co. v. Brady, says "that the misrepresentations which will sustain an action of deceit, or a plea at law, or a bill for the rescission of a contract, must be positive statements of fact made for the purpose of procuring the contract ; that they must be untrue ; that they are material ; and that the party to whom they were made relied

upon them, and was induced by them to enter into the contract.'' 22 S. W. 845, and authority cited.    Were false representations made to appellant to procure the contracts entered into ? were they material? and did he rely upon them? and was he induced by them to enter into the contract? are the questions to be considered.    As we have seen, the contracts for the purchase of the lots were entered into by appellant with Bowyer, and the deeds therefor to him were made by Bowyer.    Appellant accepted the deeds, and had them duly recorded ; and although he lived in the vicinity of the transaction, in access to the officers and agents of the Riverside Land Company, and with full knowledge of all that his vendor had promised, and of all that he had failed to do, he made no demands of the company, and asserted no claim for a rescission of his contract, for over two years, and until long after his purchase money had become due, and then not until an execution on his forfeited forthcoming bond was being enforced.    No claim is then made by him that he had not, before that time, discovered that the representations which induced him to purchase the lots were false.    We have, however, considered this case upon its merits, and not alone upon the question, which naturally arises from the foregoing statement of facts, whether, if appellant be entitled to the relief he asks, it could be afforded him only as against Bowyer, and not as against the Riverside Land Company.

Reverting to the alleged misrepresentations, we will take them in the light of the evidence and in the following order :

(1) As to the bridge that was to be built : It is not shown by the evidence that any statement was made to appellant as to what the character of the bridge was to be, or with what material to be built ; but it does show that the bridge was built at a cost of about $8,000, that it is a good and substantial bridge, and answering every purpose that it could have been expected by appellant to serve.    We will not, therefore, consider this alleged misrepresentation or inducement further.

(2) As to the industries alleged to have been secured by the

Central Land Company to be located on its property at Buchanan : The evidence shows that some of them were established and put into operation ; but, whether this is shown or not, it is impossible that appellant could have been induced to purchase the lots from Bowyer by the alleged misrepresentations as to these industries, because he admits that before he made his purchase or paid any part of the purchase money, he heard Dillon, president of the Central Land Company, publicly announce that no industries had been secured at Buchanan by his company. To avoid the effect of this admission, appellant states that, notwithstanding this announcement of Dillon, he saw men at work on the lands of the Central Land Company, yet does not say that this influenced him in making the purchases. On the contrary, he says that he did not know what to think,—was dumbfounded.

The only remaining alleged misrepresentation to be considered is "that the Shenandoah Valley Railroad Company had agreed to locate its tracks, with reference to the lands of the Riverside Land Company and the James river, so as to prevent the overflow of the lots sought to be sold to Beckley." This allegation, as we have seen, is flatly denied by Bowyer, both in his answer and deposition. To sustain it, we have only the testimony of appellant and his witness Wray, who says that he happened to be with appellant and Bowyer when the lots were shown by the latter on the day before the purchases were made, and his statement of what was said and done does not fully accord with that of appellant. It is true that other land agents at Buchanan, examined by appellant, testify that they made such representations in trying to sell the lots of the Riverside Land Company, but this is entitled to no weight, as it nowhere appears that the representations were made by authority of the Riverside Land Company. Nor could they have aided in inducing appellant to make the purchases he made, as they were not made to him, or in his hearing, so far as the record shows. The testimony given by the appellant is of the most unsatis-

factory character, due, it may be said, to a faulty memory, as shown by the fact that he makes statements that he afterwards has to retract.    Notably is a statement that he executed notes to Bowyer for his deferred payments, when the fact is, as he afterwards admitted, he never did.    The facts as they appear in this case are these : The Riverside Land Company (unlike most of such companies, organized during the period now com_ monly known as the "boom," for the purpose of buying lands, laying out towns, and selling the lots at a speculative valuation) had no flaming prospectus or other published statements containing inducements to persons to buy, other than a map, or what is called a "blue print." Upon this map the lots of the company, as laid out, were shown, and the line of the proposed roadbed of the Shenandoah Valley Railroad was indicated.    A sale of those lots was advertised for October 28, 1890.    Appellant, as did many others, arrived on the premises on October 27th, and so great was the excitement, and so intense the desire of the throng of land buyers and speculators to procure the lots, that the doors of the offices of the Riverside Land Company were broken open at 2 o'clock of the night preceding the day of sale by the eager crowd, and by 7 o'clock in the morning all of the lots had been bought.    This fact became generally known, as the company published it at once by a list of the lots exhibited for public inspection in the office of the company, and which showed to whom the respective lots had been sold, including the sale of the two lots bought by Bowyer, and afterwards sold appellant. But, so eager was appellant to purchase lots on this occasion (and for the purpose of resale, as he states), he bought a number of other lots, and, following Bowyer, made the purchase out of which this case arises between 11 and 12 o'clock that night, paid his cash payment, and signed his contracts. of purchase. Before, therefore, he had consummated his purchase of these lots, he was fully informed as to the industries alleged to have been secured by the Central Land Company, and had had the

most abundant opportunity to inform himself as to the truth of any representations that had been made to him by Bowyer, which he regarded as material. It is not claimed that any representations were made to him, when he bought the lots from Bowyer, and signed the contracts that night, nor that day ; but it is claimed they were made the preceding day, and before Bowyer had bought the lots. Appellant was a citizen of Botetourt county, deputy treasurer of the county, and must have been familiar with the grounds. He was in easy access to the officers of the railroad company, from whom he could have obtained all needed imformation as to the proposed railroad track that was to protect the lots from overflow. The map exhibited to him showed only a proposed line of railroad ; and the evidence shows that it had been surveyed, and steps taken to condemn the land for the roadbed, but how far pressed is a disputed question ; and that scheme had not been abandoned when the evidence was taken. Be this as it may, it is hardly reasonable to suppose that appellant was induced to purchase these lots by the alleged representations as to the railroad bed protecting these lots from overflow by the river. It was generally known that a roadbed of the character proposed is usually made of earth, and that, if brought in contact with high water running parallel to it, it would certainly be carried away. It is further shown that, had this proposed roadbed been made, two culverts under it would have been necessary, for the passage of a large drain, and a creek that flows from the mountains, through the property of the Riverside Land Company, into the river, and that, if these were stopped up, the whole property would be flooded, and if open, the high water would force itself through and overflow the property. With these facts confronting him, no reasonably intelligent man would have relied upon the proposed roadbed to protect the lots of the Riverside Land Company, if liable to overflow, about which conflicting statements are made.

Appellant is one of a great multitude to whom came dis-

appointment with the collapse that followed the extraordinary and extremely hazardous speculation prevalent at that time; and it came to him sooner than was usual, for he says nothing could be sold at Buchanan the day following his purchases there. As a general rule, those who sustained loss laid the blame on everybody else except themselves; and in almost every suit or proceeding to enforce the obligation growing out of the transactions of this period, the defense has been set up by the obligors that they have been swindled by false and fraudulent representations, or by misrepresentations, and a rescission of their contracts asked for on these grounds. In some cases, upon the special facts, relief may be justly demanded, but they are exceptional. If the parties were deceived, they were, as a rule, self-deceived. They simply misjudge, and were therefore disappointed in the result. What was said by Keith, P., in Improvement Co. v. Brady, supra, is entirely applicable to this case, viz.: "The minds of all men were, at that time, inflamed with the mania for speculation, and no doubt the parties to this transaction were not free from the delusions it produced. While it lasted, hopes were cherished, and expectations indulged and expressed, which, considered in the light of sober reality, seem wild and extravagant in the extreme, but which should not be branded as frauds." We are of opinion that the appellant has wholly failed to make such a case as entitles him to the relief asked. Therefore, the decree complained of is right, and must be affirmed.