## CHARLESTON.

GEORGE P. WILLIAMS *et al.* v. CARRIE H. IRVIN

(No. 5887)

Submitted October 25, 1927.    Decided November 1, 1927.

BROKERS—*Party May Refuse to Execute Contract Requiring Payment of Exorbitant Interest and Expenses Without Becoming Liable on Involved Application for Brokers' Fee.*

Where one desiring to borrow money applies to a firm holding themselves out as money lenders or brokers to be on the terms of six per cent per annum and necessary and proper expenses, and is deceived and entrapped by the brokers into signing a long and involved application on a printed form prepared by them, wherein he agrees to pay them a stipulated service fee of three hundred dollars, and he discovers when the numerous papers are presented for his signature that the execution of the contract as interpreted by them will impose upon him a contract to pay from ten to fourteen per cent and exorbitant expenses attending the loan, wholly unjustified, the proposed borrower may rightfully decline to exe-

cute the proposed papers without being rendered liable to such brokers for such service fee stipulated in the contract.

(Brokers, 9 C. J. § 103.)

(Note: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Cabell County.

Action by George P. Williams and others against Carrie H. Irvin, begun in a justice court and appealed to the common pleas court, where judgment was rendered for defendant. A judgment of the circuit court denied an appeal, and plaintiffs bring error.

*Affirmed.*

*Cyrus Van Bibber* and *J. Blackburn Watts,* for plaintiffs in error.

*J. W. Perry,* for defendant in error.

Miller, Judge:

This action was begun before a justice of Cabell County to recover of defendant the sum of $300.00, exclusive of interest and costs. The defendant's plea before the justice and before the trial court on appeal was that she did not owe anything to plaintiffs, and fraud practiced upon her by them in the procurement of the contract. On the trial before the Common Pleas Court on appeal, the verdict and judgment was in favor of defendant, and the plaintiffs brought the case here on a writ of error to the judgment of the circuit court denying an appeal.

The bill of particulars filed by the plaintiffs was: "Service for acting as agent in securing agreement of National Security Corporation of America to make loan of $7,500.00 to Mrs. Irvin.

| Service | $300.00 | |
| Appraisal | 10.00 | $310.00 |
| Less deposit | | 10.00 |
| | | |
| Balance due | | $300.00 " |

Before making application for the loan to plaintiffs they represented themselves to be engaged as partners in the mortgage loan business with general headquarters in Charleston and Huntington, West Virginia, and other places. Thus directed to them, the defendant, Mrs. Irvin, residing in Huntington, in September 1924, applied to them for a loan of $8,500.00. At the time of the application they required of her that she sign an application on a printed form addressed to them, which was a very long and involved instrument covering some eight printed pages. Her principal ground of defense was that she was to be charged for the loan at the rate of six per cent, and that plaintiffs had fraudulently induced her to sign this pretentious application and discovered when the final papers were presented to her for execution perfecting the loan, that she had been deceived into signing an application which would have involved her in a contract to pay a very large amount in excess of the legal rate of interest and all reasonable costs for obtaining the loan; and that when the papers were so presented to her by the plaintiffs, and she discovered the fraud, she declined to execute the same or accept the loan.

The principal terms of the original application relied upon by the plaintiffs are as follows: "I hereby make application for a loan of $8,500.00 to be repaid as follows: $93.50 per month for 120 months, and one payment of $3,400.00 to become due and payable ten years after date. I understand that I am to have prepared, execute and deliver subject to your direction a deed of trust upon the following described property, 201 Twelfth Avenue, Huntington, W. Va., which deed of trust will provide for a primary obligation and subordinate, and will further provide that the borrower's obligation as set out above shall be applied to said primary and subordinate obligation until paid in full. I understand I am to pay you a service fee of $............,..., if you are ready to close this loan within 30 days from this date. I understand that I am to have prepared at my own expense by an attorney and engineer of your own selection a certificate of title, plat of property, and engineer's certificate. I enclose herewith $10.00 to cover costs of appraisal and other preliminary expenses.

I agree to pay for recording deed of trust, stamps on said obligation and policy of title insurance. I understand when you have secured a commitment in accordance with the above stated amount and terms, or if for a less amount and accepted by me, that the service charge is due and payable.. Dated Huntington, West Virginia, September 5th, 1925.'' Then follows elaborate terms and provisions, with a questionnaire respecting the character of the property and its situation and condition.

It will be observed that this application was addressed solely to the plaintiffs, and there is no intimation or suggestion therein that some one else than themselves was to make the loan, except the suggestion that they were to secure a commitment, presumably by some one else, to execute the loan in accordance with the terms of the application, and the fact that the defendant was to pay the lawyer what they called a ''service fee''.

Shortly after this application, the plaintiffs notified defendant that a loan of $8,500.00 would not be allowed. This conclusion, the record shows, was their own and not the mortgage company's to whom they evidently had determined to present the proposition. They say the mortgage company relied upon them, being on the ground, to determine the amount of the loan, so that later, on November 18th, 1924, they procured defendant to sign another application addressed to them, whereby she purported to apply for a loan of $7,500.00 to be repaid as follows: $78.00 per month for 120 months, and one payment of $3,000.00 to become due and payable 10 years after date, with reference to like terms and provisions contained in the original application and specifically agreeing to pay a service fee of $300.00, if they should be ready to close the loan within 30 days from date.

When later defendant was notified by plaintiffs that they had obtained a committment from the National Security Corporation of America to make the loan, and she was requested to appear and execute the numerous papers that had been prepared and were then presented for her signature, she was surprised and declined, but after she had taken these numerous papers to her home for consideration and had the assistance

of others to determine what they all meant, as near as they could discover, and how the execution thereof would affect her rights and interest, she declined the loan and learned that instead of obtaining a six per cent loan she would have bound herself to a loan which would in the final execution of the contract have cost her from ten to fourteen per cent.

In another and later portion of the printed application disconnected with the main provisions relating to the loan, is this significant provision "in the event a loan is approved, to submit to your satisfaction a plat or survey. The abstract of the title to the property and all other papers will be prepared by an attorney satisfactory to you. To execute promptly all necessary papers, and to pay all legal, recording and notaries' fees incurred in connection with the loan, also a fee to be agreed upon for consideration of such papers by supervising counsel. To allow the lender to reserve the right of approval of all insurance policies to be signed in connection with any loan made." The amounts of none of these anticipated charges are specified, and when questioned, plaintiff represented that all these charges were included in the $93.50 per month for 120 months.

It will be observed that the application nowhere specifies the rate of interest to be charged, but it is admitted in the evidence of plaintiff Redden that the percentage agreed on was six per cent and no more, that that was what he offered the defendant. From the provisions of this application and the evidence of the witnesses, though no witness for the plaintiffs undertook to explain the figures, it appears that the following general result of the loan based upon the second application would have been $78.00 per month for 120 months, $9,360.00; balance at the end of 10 years, $3,000.00; total, $12,360.00. Computing the loan upon the principal of monthly partial payments, on a six per cent basis, and monthly payments of $78.00, at the end of 120 months the borrower would have paid the loan in full, in fact overpaid it, but would still owe the lender over $3,000.00, under the terms of the application for the loan. No witness for the plaintiffs or any one else undertakes to explain the application of this excess of principal and interest. If we concede that the

plaintiff or the lender was entitled to charge against this sum the amounts that would have been paid out on the various items specified in the application, how could they have justi- fied their proposal to absorb this large sum of money. We are unable to see from any calculation we can make, based on the rights of the parties, wherein this loan would be justified. It is shrouded in mystery.

If we take another view of the proposed contract, one based on partial payments and annual rents, at six per cent, and crediting the amount of the payments made at the end of each year, the defendant would have owed the lender at the end of the tenth year about $1,094.10, whereas the terms of the application would have left her owing $3,000.00, or $1,905.90 in excess of the legal amount, and plaintiffs have not under- taken to explain how they would have been justified in ap- propriating the $1,905.90 except upon the basis of a usurious contract forbidden by law.

This action is based upon the theory of a breach by the defendant of her alleged contract to complete the loan under the terms of her application. Plaintiffs admit that the pro- posed loan was to bear six per cent interest. Any other loan would have been usurious and void, certainly as to the excess of interest charges. As plaintiffs interpret the contract, the result of it would have been, as we have shown, and accord- ing to the papers they would have had the defendant execute, a fraud upon her and the obligating of her to pay for the loan a sum greatly in excess of six per cent, allowing them for all reasonable and proper charges against her payments. No one not familiar with the intricacies of the proposed con- tract and skilled in the manner employed to dupe and exploit borrowers can figure it out, and neither the plaintiffs nor any witness for them have undertaken to do so. We have tried our hand in the effort but without success. Plaintiffs rest their case upon the theory that there could be no fraud, be- cause the defendant was as competent as any one to read and understand the contract as the other parties to it were. The only answer that needs to be made is that they themselves have not undertaken to explain it in this case. We have no quarrel with counsel as to the legal principles enunciated in

the cases cited by them for the general proposition that in order to support an action for deceit or fraudulent representation, one must show that the representations were untrue, were known to the defendant to be untrue and were calculated to induce the plaintiff to act and would so induce him. *Beckley* v. *Riverside Land Co.*, 2 Va. Dec. 283, citing Smith on Law of Frauds; *Wamsley* v. *Currence*, 25 W. Va. 543. Did not the plaintiffs in this case know, and know in a way that the defendant could not reasonably know, that they were proposing to involve her in a contract at a rate of interest fraudulent and unlawful, and when they proposed, as they did, that she sign the numerous papers which they seem to have presented to her, they were misleading her to her detriment and injury? We think the court was fully justified in the instructions to the jury complained of, and in refusing the instructions proposed on their behalf. Assuming, as it is argued, that defendant was competent to figure out the results of the contract, it is fraudulent on its face, and she was perfectly justified in declining to execute it. On the question of her competency to interpret the proposed contract, we observe that while one of the witnesses for the plaintiff calculated the interest proposed to be charged to amount to fourteen per cent, another witness, an expert building association man, calculated that the interest would have amounted to ten per cent per annum, but he could not be accurate within one or two per cent.

The jury found on the issues joined that the effect of the contract was fraudulent and void, and we are of the opinion to affirm the judgment.

*Affirmed.*