# CHARLESTON.

THE MILES F. BIXLER CO. *v.* L. L. DUNSMORE

(No. 6591)

Submitted November 12, 1930.   Decided November 25, 1930.

*Thomas N. Read,* for plaintiff in error.

LIVELY, PRESIDENT:

The parties will be designated as in the trial court.

The plaintiff dealt in jewelry at Cleveland, Ohio, and defendant had a small mercantile and restaurant business at Sinks Grove, West Virginia. Acree, a salesman of plaintiff, came to the defendant's store and restaurant on July 18, 1927, and solicited a contract of sale and purchase of jewelry amounting to $246.00. After negotiations in which, according to the evidence of defendant and another witness, Acree represented himself to be the general manager instead of a salesman, the written contract of purchase and sale which is the basis of this suit was entered into. The contract was a printed form of order for a certain designated stock of jewelry listed on this form, the amounts and price of each article being given, the total amounting to the sum of $246.00. The terms of payment were in six equal amounts due in two, four, six, eight, ten and twelve months from date of invoice, the purchaser to promptly advise acceptance of terms of payment; otherwise 6% discount or net 60 days. The printed form also said that salesmen had no authority to change or add to the terms of the contract except in writing on the original order which order was subject to acceptance by plaintiff. The order was not subject to countermand; and delivery to the carrier was delivery to the purchaser, the latter to pay the charges. The jewelry was to be shipped by express and a showcase by freight. Two changes were made in the printed form. The form provided "our silent salesman loaned for the exclusive display of Bixler Staples Jewelry Guaranteed." The word *loaned* in the above was stricken out, and the word *given* written in its place. This was done by the salesman Acree. The other change was a marginal one and is in these words: "Allow thirty days dating." It is around this marginal writing that the controversy revolves. Defendant signed the writing on that day, and it was promptly forwarded to plaintiff at Cleveland and notation of acceptance was written thereon by the plaintiff July 20, 1927. Plaintiff, on that day, wrote a letter to defendant advising receipt of

the order and sending a certified copy thereof to defendant in which letter the terms of payment in six equal amounts of $41.00 each, due 2, 4, 6, 8, 10 and 12 months from the date of invoice, or 6% cash, were set out. The jewelry was delivered to the American Express Company on the following day, July 21, 1927, and in due time reached its destination at Ronceverte, the express office nearest defendant and designated as such in the order. It does not appear whether the showcase was ever sent, or, if sent, the date it was delivered to the common carrier. On July 20th, defendant wrote a letter to plaintiff cancelling the order of jewelry and notifying them not to ship it, stating that he did not desire the jewelry, and that there was too much of it for a little country village. When the jewelry reached the express delivery station, the agent there notified defendant who refused to receive the goods, advising the agent that the order had been cancelled. The goods remained there some time, and were finally returned to the plaintiff on its order, and, according to its evidence, set aside for defendant and considered as defendant's goods subject to his order.

Plaintiff sued on the written contract by notice of motion for judgment, and defendant filed a special plea to the effect that the contract was obtained by misrepresentation and fraud on the part of Acree, in that he told him that he could have thirty days in which to consider whether the order would be final, and that he represented to him that the notation he then made on the contract, namely, "allow thirty days dating," meant that defendant should have thirty days in which to decide, after consultation with his wife, who was interested in the business, whether he would complete the contract and make it effective. Plaintiff demurred to the special plea which was overruled, and the parties went to trial. Plaintiff introduced the original contract with its acceptance thereon and with the changes above set out made thereon by its salesman, Acree, and testified as to the delivery of the goods, the receipt of the letter from defendant, and its refusal to accept the countermand; and to the effect that the goods had been delivered at the freight station of defendant, by him refused, and that they had been returned and by it set aside for defendant, subject to his order. Defendant, over the objection

of the plaintiff, testified that he had given the order, and that he was to have thirty days in which to consider whether he would make the order final after consultation with his wife who was interested in the business, and that Acree then made the notation on the order, which notation, the salesman informed him, meant that he should have thirty days time. in which to consider whether he would take the jewelry. Another witness, who was present in the store and restaurant, confirms the defendant's testimony in that regard. Another witness for defendant, a Miss Vaughan, who conducted a millinery store at Union, about twenty miles from defendant's place of business, was permitted to testify, over the objection of plaintiff, that about the same time in 1927, the same salesman, Acree, came to her place of business and represented to her that he was general manager and induced her to sign a contract which she did not intend to sign, and afterwards she ascertained that he was not general manager, but a salesman, by correspondence with the plaintiff; and that after the goods which had been sent to her by parcel post had remained in the postoffice for some time, and rather than to have a lawsuit or trouble, she finally accepted the goods.

Plaintiff moved for an instructed verdict in its behalf, which motion was refused. Plaintiff tendered and was given another instruction to the effect that the jury should not consider any alleged verbal statements or representations claimed by the defendant to have been made by the agent which would have the effect of changing or adding to the terms of the original contract other than those changes which were on the contract unless they believed that the contract was procured to be signed by defendant by fraudulent misrepresentations of the agent as to some material fact or condition therein; and that if defendant could avoid the effect of the written contract on account of some fraudulent representations of the agent, then the burden of proving such false representations was upon the defendant, and he must prove the same by the preponderance of the evidence. Defendant's instruction, given, is to the effect that if the jury believe that the signature of defendant on the contract procured by the salesman was induced by fraudulent and false representations and that defendant relied thereon, then they should find for defendant.

This instruction was objected to by plaintiff. The jury returned a verdict in favor of defendant, and the usual motions were made and overruled, and plaintiff prosecutes this writ.

Whether the salesman represented to defendant that he was general manager, as testified to by defendant's witness, is unimportant, for what he did in changing the printed form of order he could do as salesman. The writing itself provided that a salesman could change the printed form by a writing on the printed order, which was subject to plaintiff's acceptance. He did so, and the order was accepted with those changes made by him, and it is unimportant whether it was done by a general manager or by a salesman. Defendant was acting through its agent at the formation of the contract and is bound by what he did, within the scope of his authority.

The crux of the case is whether the agent in procuring the contract, and making the change in the printed form, falsely represented to defendant some material matter, on which defendant in good faith relied. Defendant admits reading the printed form, and that he signed it; but he says he did so upon the representation of the agent that defendant should have thirty days in which to consult his wife and determine whether he would take the jewelry. And to confirm that understanding the agent wrote on the printed form the words "allow 30 days dating," which the agent said embodied that understanding. Defendant says that without that understanding of the words, he would not have signed the order. Corroborative of his understanding of this change in the printed form (which said "not subject to countermand") he consulted his wife promptly and two days after giving the order wrote the letter countermanding it, and notified plaintiff not to ship the jewelry. The salesman says in his deposition, read to the jury, that he explained the contract fully, and there was no agreement or understanding other than that contained in the printed form and the two changes made. He says: "I also allowed him an extra thirty days dating making that notation on the original order." He does not deny that he told defendant the meaning of that notation. No one attempts to explain its meaning. We presume that ordinarily it would mean an extension of credit for goods sold. If such be the meaning among mer-

chants, it is not shown in this case. In acknowledging receipt of the order, plaintiff wrote defendant on July 20th that the terms of payment were in six equal amounts of $41.00 each due in "2, 4, 6, 8, 10 and 12 months from date of invoice *of 6% cash*". If the notation meant to give defendant an extension of time for thirty days, it was not so interpreted by this letter, at least no extension seems to have been given by that letter. But we are not here concerned with a patent ambiguity in a contract. The question here to be decided is whether defendant was induced by plaintiff's representations to believe that these words gave him thirty days to confirm the contract and take the goods. Fraudulent representations may induce a person to assent to do something which he would not otherwise have done, or it may induce him to believe that the act which he does is something other than it actually is. Williston on Sales, (2d Ed.) sec. 625. If the salesman agreed that defendant should have thirty days in which to rescind the order, and made the notation on the contract to embody that undertaking representing to defendant that it actually did so, knowing that it did not, he thereby deceived, and his representations that he had embodied the understanding were fraudulent.

The leading case for the doctrine that fraudulent representations will vitiate a written contract where it induces a person to do something other than that what was intended to be done, is the English case of *Foster v. McKinnon*, L. R. 4 C. P. 704. There defendant signed a bill of exchange under the belief fraudulently induced, that he was signing a guaranty. Illustrative of the principle is *Eldorado Jewelry Co. v. Darnell* (Iowa), 113 N. W. 344, where a merchant signed an order for purchase of jewelry under the mistaken supposition that it was a contract to receive goods and sell them on commission. In that case the merchant's eyesight was bad, and advantage was evidently taken of his physical defect. Our recent case of *Williams v. Erwin*, 104 W. Va., 438, is in point. In that case the contract in writing for a loan on certain terms was signed by defendant in which she agreed to pay a named sum to plaintiffs for their services in negotiating the loan for her. She understood from representations made to her at the time

of signing that the paper provided for the loan to be made at 6% interest. When the final papers were presented to her, all made in conformity to her signed contract, she then found that the loan would carry from 10 to 14% interest and refused to consummate the loan; whereupon plaintiffs sued her for the sum she had agreed in the writing to pay them for negotiating the loan. Plaintiffs were denied recovery by the jury and trial court, and this court affirmed. The contract for the loan on its face would have put her on notice that the rate of interest was more than 6%, but plaintiffs had told her that it carried an interest rate of 6%. The application contract for the loan was a long and involved printed form, and it was difficult to determine what rate of interest the loan carried. She relied upon its interpretation as to the rate of interest, on the representation of plaintiffs who presented it to her. In the instant case we have the representation of the salesman that the notation made by him on the printed form was intended to and did embody the true agreement, and relied on by defendant. We are of opinion that the evidence of defendant and the witness who corroborated him as to the formation of the contract was admissible to show that plaintiff's agent fraudulently induced the signing of the contract sued on; and that the evidence of the milliner was admissible to show the salesman's method of obtaining such contracts (the court so told the jury) and tended to corroborate defendant's testimony.

It may be observed that defendant's special plea fully set out his defense, and that plaintiff neither in evidence in chief nor by way of rebuttal denied that the contract was made under such representations. They relied upon the proposition that this defense could not be heard.

The judgment is affirmed.

*Affirmed.*